UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JOHN C. PERRY, M.D., and<br>TEDDY BEAR OBSTETRICS &<br>GYNECOLOGY, P.S.,<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>THOMAS M. RADO, M.D., et al.,<br><br><br>　　　　　Defendants. | No. CV-07-5001-LRS<br><br>**ORDER GRANTING<br>MOTION TO DISMISS** |

**BEFORE THE COURT** is the Defendants' Fed. R. Civ. P. 12(b)(6) Motion To Dismiss (Ct. Rec. 4). Oral argument was heard on May 10, 2007. R. Bruce Johnston, Esq., appeared for Plaintiffs. David B. Robbins, Esq., appeared for Defendants.

**I. BACKGROUND**

　　Plaintiffs, John C. Perry, M.D., and Teddy Bear Obstetrics & Gynecology, P.S., have filed a complaint which alleges a cause of action under the Sherman Anti-Trust Act, 15 U.S.C. §1, and various common law and/or statutory causes of action under Washington State law. Federal jurisdiction is asserted on the basis of federal question jurisdiction, 28 U.S.C. §1331, giving rise to supplemental jurisdiction over the state law claims, 28 U.S.C. §1367(a).

**ORDER GRANTING
MOTION TO DISMISS-　　　　　1**

Dr. Perry is a board certified obstetrician and gynecologist and a member of the medical staff at Kennewick General Hospital in Kennewick, Washington. He is the principal owner of Teddy Bear Obstetrics & Gynecology, P.S. Dr. Perry had been a member of the medical staff at Kadlec Medical Center (Kadlec) in Richland, Washington.

Plaintiffs allege that Dr. Perry's credentials at Kadlec were improperly revoked as a result of a conspiracy by the Defendants "in restraint of trade in violation of Section 1 of the Sherman Act." (Complaint, Ct. Rec. 1 at Paragraph 112). More specifically, Plaintiffs allege that Defendant Associated Physicians For Women, P.L.L.C. (APW)[1], and its individual members, "set about driving Dr. Perry out of business in Richland, Washington, and indeed out of business in the Tri-City area of Washington, which includes Richland, Washington. (Complaint at Paragraph 48). Plaintiffs allege that "[i]n order to accomplish this anticompetitive purpose, APW and/or its individual members solicited and obtained agreements from [Defendants] Dr. Rado[2], Kadlec, and other co-conspirators to utilize the Medical Staff procedures in a manner contrary to their purposes, contrary to the Bylaws and Fair Hearing Plan of the said Medical Staff, all in bad faith, to exclude Dr. Perry from practice at Kadlec and in the Richland and/or Tri-City Area of Washington." (Complaint at Paragraph 49). It is also alleged that "APW, its individual members, Dr. Rado, and other co-conspirators used the credentialing and quality assurance processes of the . . . Medical Staff to undertake and continue a boycott of Dr. Perry by, among other things, falsely and/or discriminatorily asserting objections and obstacles to his clinical privileges and/or professional conduct and/or Medical Staff membership." (Complaint at

---

[1] APW's principal place of business is in Richland.

[2] Thomas M. Rado, M.D., is the Elected Chief of Staff of the Medical Staff at Kadlec.

**ORDER GRANTING**
**MOTION TO DISMISS-**                2

Paragraph 50). Furthermore, it is alleged that the wrongful use of these processes was with the knowledge, aid and participation of Defendants Kadlec, Dr. Rado, Dr. Bowers[3], Dr. Rawlins[4] and Dr. Occhino[5] "with the purpose and effect that Dr. Perry's practice be injured or destroyed, and also as a tool to drive him and his practice from Richland, Washington, and/or to reduce and/or eliminate effective competition from Dr. Perry and as an example to others." (Complaint at Paragraph 51). Plaintiffs seek declaratory relief, injunctive relief, and damages, including treble damages for the alleged violation of the Sherman Act.

Defendants contend the Plaintiffs' complaint fails to state a claim under the Sherman Act which can be granted and therefore, the claim should be dismissed with prejudice and in turn, the court should decline to exercise supplemental jurisdiction over the pendent state law claims and dismiss those claims without prejudice to their being reasserted in state court. Defendants contend that Plaintiffs' Complaint fails to allege an "antitrust injury" under the Sherman Act (harm to competition) and alleges "no more than Dr. Perry's personal grievance with the Defendants."

## II. DISCUSSION

A Rule 12(b)(6) dismissal is proper only where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699

---

[3] Fredrick Bowers, M.D., is the Elected Vice-Chief of Staff of the Medical Staff at Kadlec.

[4] Neil W. Rawlins, M.D., is affiliated with APW and is Chair of the Credentials Committee of the Medical Staff at Kadlec

[5] Amy R. Occhino, M.D., is affiliated with APW and is Chair of the Obstetrics and Gynecology Department of Kadlec.

**ORDER GRANTING
MOTION TO DISMISS-              3**

(9th Cir. 1990). In reviewing a 12(b)(6) motion, the court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from such allegations. *Mendocino Environmental Center v. Mendocino County*, 14 F.3d 457, 460 (9th Cir. 1994); *NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). The complaint must be construed in the light most favorable to the plaintiff. *Parks School of Business, Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). The sole issue raised by a 12(b)(6) motion is whether the facts pleaded, if established, would support a claim for relief; therefore, no matter how improbable those facts alleged are, they must be accepted as true for purposes of the motion. *Neitzke v. Williams*, 490 U.S. 319, 326-27, 109 S.Ct. 1827 (1989). The court need not, however, accept as true conclusory allegations or legal characterizations, nor need it accept unreasonable inferences or unwarranted deductions of fact. *In re Stac Electronics Securities Litigation*, 89 F.3d 1399, 1403 (9th Cir. 1996).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide 'the grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Bell Atlantic Corporation v. Twombly*, ___ U.S. ___, 2007 WL 1461066 at *8 (May 21, 2007). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . . ." *Id*. In *Bell*, the United States Supreme Court held that stating a claim under Section 1 of the Sherman Act requires a complaint with enough factual matter, taken as true, to suggest that an agreement was made. *Id*.[6] According to the Court, "[a]sking for plausible grounds

---

[6] Section 1 of the Sherman Act "prohibits conspiracies and agreements that unreasonably restrain trade." *Thurman Indus., Inc. v. Pay N' Pak Stores, Inc.*, 875

**ORDER GRANTING**
**MOTION TO DISMISS-            4**

to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of an illegal agreement." *Id*. Heightened fact pleading of specifics is not required. Instead, what must be pled are enough facts to state a claim for relief that is plausible on its face. *Id*. at *14. Logically, the same pleading requirements pertain to the other elements of a Section 1 claim, including injury to competition beyond the impact on a particular plaintiff.

Antitrust liability under §1 of the Sherman Act is analyzed under either a per se rule or a balancing test known as the "rule of reason." *Austin v. McNamara*, 979 F.2d 728, 738 (9th Cir. 1992). The per se rule is reserved for those "certain agreements or practices which because of their pernicious effect on competition and lack of any redeeming virtue are conclusively presumed to be unreasonable and therefore illegal." *Id*., quoting *Northern Pacific Railway Co. v. United States*, 356 U.S. 1, 5, 78 S.Ct. 514 (1958). Arrangements which can potentially fall into this category are price-fixing agreements, tying arrangements, horizontal divisions of markets, and certain group boycotts. *Id*. In order for a plaintiff to establish a Section 1 violation of the Sherman Act under the "rule of reason," he must demonstrate: (1) an agreement, conspiracy, or combination among two or more persons or distinct business entities; (2) which is intended to harm or unreasonably restrain competition; and (3) which actually causes injury to competition, beyond the impact on the plaintiff, within a field of commerce in which the plaintiff is engaged. *Id*. In the absence of a showing that the market as a whole has been affected, the fact one competitor must practice elsewhere is not an antitrust injury. *Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 31, 104 S.Ct. 1551 (1984)(abrogated on other grounds by *Illinois Tool Works, Inc. v. Independent Ink, Inc.*, 574 U.S. 28, 126 S.Ct. 1281 (2006)).

---

F.2d 1369, 1373 (9th Cir. 1989).

**ORDER GRANTING
MOTION TO DISMISS-            5**

Antitrust laws are intended to preserve competition for the benefit of consumers. *Am. Ad Mgmt., Inc. v. Gen. Tel. Co. Of California*, 190 F.3d 1051, 1055 (9th Cir. 1999). "[R]eduction of competition does not invoke the Sherman Act until it harms consumer welfare." *Rebel Oil Co. v. ARCO*, 51 F.3d 1421, 1433 (9th Cir. 1995). As such, the antitrust laws are only concerned with acts that harm "allocative efficiency **and** raise[] the price of goods above their competitive level or diminish[] their quality." *Id*. (emphasis in original). The factual support needed to show injury to competition must include proof of the relevant geographic and product markets and demonstrations of the restraint's anticompetitive effects within those markets. Avoiding such market analysis requires proof of actual detrimental competitive effects such as output decreases or price increases. *Les Shockley Racing, Inc. v. National Hot Rod Ass'n*, 884 F.2d 504, 508 (9th Cir. 1989).

The allegations in Plaintiffs' Complaint are concerned with the impact on Dr. Perry of the alleged agreement, combination or conspiracy by the Defendants, rather than with injury to competition in general.[7] At most, the Complaint makes conclusory allegations of injury to competition. This is insufficient. Furthermore, it is unreasonable to infer from the allegation of injury to Dr. Perry that there was also injury to competition. No facts are pled showing a cognizable antitrust injury (i.e., a rise in the price of OB/GYN services above a competitive level; decrease in the supply of OB/GYNs in the relevant market; or a decrease in the quality of OB/GYN service provided).

Judicial notice is taken that the municipalities of Richland and Kennewick

---

[7] In their response brief (Ct. Rec. 7 at p. 6), Plaintiffs state that "the consequence of being wrongfully excluded from the OB/GYN practice in Richland, Washington where he [Dr. Perry] had theretofore been an effective competitor . . . caused injury to **the plaintiff** [Dr. Perry]." (Emphasis added).

**ORDER GRANTING**
**MOTION TO DISMISS-**          6

border one another and are part of the "Tri-Cities" which also includes Pasco. Fed. R. Evid. 201. Dr. Perry retains privileges to render services at Kennewick General Hospital. (Complaint at Paragraph 6). Furthermore, it is undisputed that Teddy Bear Obstetrics & Gynecology retains privileges to render services at Kadlec in the person of Dr. Perry's colleague, Alexander Ortolano, M.D.[8] It would appear the Tri-Cities constitutes the relevant geographic market, that being "an area of effective competition where buyers can turn for alternate sources of supply." *Morgan, Strand, Wheeler & Biggs v. Radiology, Ltd.*, 924 F.2d 1484, 1490 (9th Cir. 1991). The fact that Dr. Perry retains privileges at Kennewick General Hospital belies any injury to competition in that market. Even if, however, the relevant geographic market were limited to Richland, the fact that Teddy Bear Obstetrics & Gynecology retains privileges to render OB/GYN services at Kadlec belies any injury to competition in that market.

Plaintiffs assert that a "group boycott" by Defendants is alleged in the Complaint, although the term "group boycott" is not specifically used, and more importantly, there is only a conclusory allegation of boycott without the pleading of any particular facts establishing a per se restriction on competition and a decrease of output. Unless the challenged activity "falls into a category likely to have predominantly anticompetitive effects," the per se analysis of a concerted refusal to deal claim is overbroad. *Northwest Wholesale Stationers, Inc. v. Pacific Stationery and Printing Co.*, 472 U.S. 284, 298, 105 S.Ct. 2613 (1985).

---

[8] Paragraph 38 of the Complaint states that in approximately March, 2005, Dr. Perry hired an associate physician to work with him in his practice and made it known he intended to further expand his practice to include additional physicians. While the Complaint does not mention Dr. Ortolano by name, the Plaintiffs in their response brief did not in any manner refute Defendants' assertion that the "associate physician" in question is Dr. Ortolano and that he retains privileges at Kadlec.

**ORDER GRANTING
MOTION TO DISMISS-              7**

Anticompetitive effect is unlikely unless the boycotting party "possesses market power or exclusive access to an element essential to competition." *Id*. As discussed above, Plaintiffs' Complaint does not, and cannot, allege that any of the Defendants dominated the Tri-Cities or Richland market for OB/GYN services or controlled an element essential to competition in those markets. Furthermore, in *Austin*, the Ninth Circuit Court of Appeals held that the "rule of reason," rather than the per se analysis, was the appropriate standard to evaluate a doctor's claims that attacks on his professional judgment and ability by other members of the medical staff, other doctors' refusal to cover for him, and the hospital's actions to suspend his staff privileges, were part of a conspiracy in restraint of trade. According to the court, even if these acts "were somehow intended to lead to a denial of staff privileges, a per se approach still would not be appropriate." 979 F.2d at 738.

In their response brief, Plaintiffs assert they could plead certain additional facts in an amended complaint which would suffice to state a claim for relief under Section 1 of the Sherman Act. (Ct. Rec. 7 at pp. 7-8). The facts pled, however, do not establish antitrust injury and effectively do nothing more than repeat the conclusory allegations of injury to competition in the relevant market which are contained in the Complaint.

For example, Plaintiffs assert "[t]he conspiracy has caused, and a continuation of the conspiracy will cause, an increase in the price of medical services in the Richland, Washington area, a reduction of the quality of medical services in the Richland, Washington area, and/or will restrict or reduce the availability of medical services in . . . Richland, Washington." This allegation does not indicate which "medical services" are impacted (i.e., OB/GYN services) and use of the "and/or" language indicates uncertainty about the impact to competition. This allegation amounts to mere speculation about a potential antitrust injury. Plaintiffs offer no particular factual allegations that other

**ORDER GRANTING
MOTION TO DISMISS-            8**

OB/GYNs, besides Dr. Perry, have been excluded from the relevant market; that patients in the relevant market are unable to find alternatives to the Defendants for OB/GYN needs; that Plaintiffs are incapable of competing in the relevant market; or that there has been an anticompetitive increase in the price of OB/GYN services in the relevant market. In this regard, Plaintiffs' Complaint should be compared to the complaint at issue in *Pinhas v. Summit Health, Ltd.*, 894 F.2d 1024 (9th Cir. 1989), where a physician whose hospital staff privileges had been revoked alleged the defendants had conspired against him with the intention of boycotting his attempts at providing patients with lower prices as a result of his ability to perform operations at a rate quicker than that of his competitors. The Ninth Circuit Court of Appeals concluded this allegation adequately pleaded injury to competition because "[a]ssuming Pinhas's allegation that he provides his services at a rate cheaper than that of his competitors to be true, the preclusion of Pinhas from practicing could conceivably injure competition by allowing other similar doctors to charge higher prices for their services." *Id*. at 1032. Plaintiffs in the case at bar do not plead a similar factual allegation and indeed, even if Teddy Bear Obstetrics & Gynecology provides OB/GYN services at a lower price, those lower-priced services remain available to Dr. Perry's patients at Kennewick General Hospital and to Dr. Ortolano's patients at Kadlec.

Plaintiffs also assert that "Kadlec is the only Hospital in Richland, Washington, and APW, at the times relevant hereto, employed the majority of OB/GYN physicians in Richland, Washington, the relevant market, and the majority of OB/GYN physicians in the Tri-Cities area." Even assuming this is true, it is also true that Teddy Bear Obstetrics & Gynecology, through the person of Dr. Ortolano, retains privileges at Kadlec and can admit patients there. The mere fact APW employs the majority of OB/GYN physicians in Richland and the Tri-Cities does not give rise to a reasonable inference that competition has been injured by a single physician's loss of privileges at Kadlec. Moreover, as

**ORDER GRANTING
MOTION TO DISMISS-            9**

discussed above, the relevant market is actually the Tri-Cities area, a point tacitly conceded by Plaintiffs in asserting that APW employs the majority of OB/GYN physicians in the Tri-Cities, and in asserting that Defendants, "through improper, false and malicious communications . . . partially did cause a reduction of Dr. Perry's clinical privileges at [Kennewick General Hospital]." The court notes there is no indication of what this "partial" reduction specifically entails. There is no indication that Dr. Perry is precluded from admitting patients to Kennewick General Hospital.

### III. CONCLUSION

Plaintiffs' Complaint offers no more than conclusory allegations of antitrust injury under Section 1 of the Sherman Act. The factual allegations which Plaintiffs say they could plead in an amended complaint are not enough to raise a right to relief above the speculative level. Not enough factual matter is alleged which, taken as true, suggests there was any injury to competition beyond the impact on Dr. Perry. The Plaintiffs have not pled enough facts in their Complaint, nor have they proposed to plead enough facts in an amended complaint, to raise a reasonable expectation that discovery will reveal evidence of injury to competition. As such, there is no reason to provide Plaintiffs with an opportunity to formally amend their Complaint. *Shermoen v. United States*, 982 F.2d 1312, 1319 (9th Cir. 1992)(where proposed amendment does not cure the defect, court has discretion to deny a motion to amend). Because no cognizable antitrust injury is alleged, Plaintiffs' Complaint fails to state an antitrust claim upon which relief can be granted. Accordingly, Defendants' Motion To Dismiss (Ct. Rec. 4) is **GRANTED** and Plaintiffs' antitrust claim is **DISMISSED with prejudice**.

The antitrust claim provided this court with its original federal jurisdiction. Because of the dismissal of this claim, the court declines to exercise supplemental jurisdiction over the pendent state law claims alleged by Plaintiffs in their

**ORDER GRANTING
MOTION TO DISMISS-             10**

Complaint. 28 U.S.C. §1367(c)(3). Accordingly, those claims are **DISMISSED without prejudice** to their reassertion in state court.

Because all claims are dismissed, this action is **DISMISSED** and the District Executive shall enter judgment accordingly and close this file.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this order and provide copies of it and the judgment to counsel of record.

**DATED** this ___24th___ day of May, 2007.

s/Lonny R. Suko
_____
LONNY R. SUKO
United States District Judge

**ORDER GRANTING
MOTION TO DISMISS-               11**